UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RESQNET.COM, INC.,

                    Plaintiff,                    01 Civ. 3578 (RWS)

        - against -                               OPINION

LANSA, INC.,

                    Defendant.

------------------------------------------X

A P P E A R A N C E S:


            Attorney for Plaintiff

            KAPLAN GILMAN GIBSON & DERNIER LLP
            900 Route 9 North
            Woodbridge, N.J.  07095
            By: JEFFREY I. KAPLAN, Esq.

            Attorneys for Defendant

            ARENT FOX LLP
            1050 Connecticut Ave., N.W.
            Washington, D.C. 20036
            By: JAMES H. HULME, Esq.
                JANINE A. CARLAN, Esq.

            1675 Broadway
            New York, N.Y.  10019
            By: DAVID N. WYNN, Esq.

Sweet, D.J.,

Lansa, Inc. ("Lansa" or the "Defendant") has moved, pursuant to Fed. R. Civ. P. 52(b), for reconsideration of the Court's judgment entered April 4, 2008, and in the alternative for a new trial pursuant to Fed. R. Civ. P. 59(a). As set forth below, upon reconsideration the judgment is affirmed, and the motion for a new trial is denied.

## I.   PROCEDURAL HISTORY

On April 27, 2001, ResQNet.com, Inc. ("ResQNet" or the "Plaintiff") sued Lansa for infringement of United States Patent Nos. 5,831,608 (the "'608 Patent"), 5,530,961 (the "'961 Patent"), 5,792,659 (the "'659 Patent") and 5,812,127 (the "'127 Patent"). On December 4, 2001, ResQNet filed an amended complaint, alleging infringement of the same four patents previously named as well as United States Patent No. 6,295,075 (the "'075 patent"). Discovery progressed and ResQNet withdrew its claims concerning the '659 Patent and the '127 Patent.

On June 12, 2002, this Court held a Markman hearing to address the issues of patent claim construction as to the three patents remaining in the case. On September 5, 2002, the Court

1

issued an Opinion construing certain claims of those patents.
See ResQNet.com, Inc. v. Lansa, Inc., No. 01 Civ. 3578 (RWS),
2002 WL 310028011 (S.D.N.Y. Sept. 5, 2002) ("ResQNet I").

         To facilitate appeal, the parties entered into a
consent judgment by which ResQNet withdrew all allegations of
infringement with the exception of one claim each with regard to
the '961, '608 and '075 Patents, and stipulating that Lansa's
systems would not infringe these remaining claims under the
holding of ResQNet I.  ResQNet then appealed that holding, which
the Court of Appeals for the Federal Circuit affirmed in part
and reversed in part.  See ResQNet.com, Inc. v. Lansa, Inc., 346
F.3d 1374 (Fed. Cir. 2003) ("ResQNet II").  Based upon the
consent judgment and the Federal Circuit's affirmance of this
Court's ruling on the '961 Patent, only two claims, related to
the '075 and '608 Patents respectively, remained.

         Discovery resumed, and both parties moved for partial
summary judgment and sanctions pursuant to Fed. R. Civ. P. 11,
among other relief.  On January 13, 2005, this Court denied both
parties' motions for partial summary judgment and Plaintiff's
motion for sanctions, and granted in part Defendant's motion for
sanctions on the grounds that ResQNet had continued to prosecute
claims on the '127 and '608 Patents for almost a year after

                               2

determining that those claims were meritless.  See ResQNet.com,
Inc. v. Lansa, Inc., 382 F. Supp. 424 (S.D.N.Y. 2005) ("ResQNet
III").

    The parties then moved for partial summary judgment on
the issue of ResQNet's alleged inequitable conduct in the
prosecution of the '075 Patent.  By an Opinion dated November
22, 2006, this Court granted summary judgment in favor of
ResQNet on this issue.  See ResQNet.com, Inc. v. Lansa, Inc.,
No. 01 Civ. 3578 (RWS), 2006 WL 3408435 (S.D.N.Y. Nov. 22, 2006)
("ResQNet IV").

    A bench trial was held from May 21, 2007 to May 24,
2007, and post-trial memoranda were submitted up to and
including August 29, 2007.  On February 1, 2008, this Court held
in favor of Lansa as to the '608 Patent, and in favor of ResQNet
as to the '075 Patent.  The Court also held that an award of
$100,000 to Lansa was an appropriate sanction for ResQNet's
continued prosecution of the claims it had determined to be
meritless.  See ResQNet.com, Inc. v. Lansa, Inc., 533 F. Supp.
2d 397 (S.D.N.Y. 2008) ("ResQNet V").

    Lansa filed the instant motions on April 15, 2008.
The motions were heard and marked fully briefed on May 7, 2008.

3

The parties have subsequently submitted a long series of letters continuing to argue issues raised by Lansa's motions. Some of these letters were withdrawn by ResQNet on September 18, 2008.

**II.  FACTS**

The relevant facts were laid out in ResQNet I, III, and V. Familiarity with those Opinions is assumed.

**III. UPON RECONSIDERATION THE JUDGMENT IS AFFIRMED**

**A.    Applicable Standard**

"The standards governing motions for amendment of findings under Rule 52(b), motions to alter or amend a judgment pursuant to Rule 59(e), and motions for reconsideration pursuant to Local Rule 6.3 are the same." Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294 (PKL), 2004 WL 2210261, at *2 (S.D.N.Y. Sept. 30, 2004); 4200 Ave. K LLC v. Fishman, No. 00 Civ. 8814, 2001 WL 498402, at *1 (S.D.N.Y. May 10, 2001). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to

4

alter the conclusion reached by the court." Rafter v. Liddle, No. 07-2282-cv, 2008 WL 3842709, at *1 (2d Cir. Aug. 13, 2008) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

## B.   Discussion

Lansa makes four arguments in favor of reconsideration of ResQNet V's holding on the '075 Patent. First, Lansa argues that the Court ignored its determination made in ResQNet I, affirmed by the Federal Circuit and reiterated in ResQNet III, that the '075 Patent requires creation of a unique screen identification number by use of an algorithm. Lansa asserts that it has been established that its product, NewLook, does not use an algorithm to assign screen identification numbers, and the judgment should therefore be reversed. Second, Lansa argues that the Court erred by not finding claim 1 of the '075 Patent inoperable. Third, Lansa argues that the Court overlooked evidence supporting its "on-sale bar" defense. Finally, Lansa argues that the Court overlooked the fact that ResQNet never withdrew the '608 Patent when awarding Rule 11 sanctions and otherwise erred in assessing the amount of the sanctions award.

## 1.   **ResQNet V Applied the Appropriate Construction of the '075 Claim**

Holding that the '961 Patent specification is incorporated by the other patents, including the '075 Patent, ResQNet I focused on the construction of four terms listed in claim 1 of the '961 Patent. ResQNet I at *4. After analyzing the relevant claim language and specifications, the Court held, inter alia, that "to generate" means to produce by means of an algorithm, and that "screen identification (ID)" refers to a number. Id., at *9. The Federal Circuit reversed the construction of claim 1 of the '075 Patent, "but only to the extent that it required the claimed method to include more than a plurality of specific screen identifying information." ResQNet III, 382 F. Supp. 2d at 440 (internal quotations omitted). On summary judgment, relying on the Federal Circuit's decision, the prosecution history and specification of the '075 Patent, and ResQNet's own representations and omissions, this Court reiterated that the '075 Patent requires use of an algorithm that generates screen IDs. Id. at 441 ("The relevant intrinsic evidence as well as ResQNet's own representations and admissions . . . demonstrate that an algorithm is required by the 'match[ing]' process described in the fifth limitation of claim 1, which limitation explains the result where 'said

6

received screen *matches* one of the plurality of specific
identifying information.'"    ResQNet III, 382 F. Supp. 2d at 441
(second alteration and emphasis in original) (quoting '075
Patent, col. 5, ll. 14-15).

        Lansa argues that ResQNet V ignored the prior claim
construction, impermissibly broadening the scope of claim 1 of
the '075 Patent to require only "an algorithm that recognizes
the screen based on the information downloaded from the
mainframe," without any further limitation.    See Def. Br. 4-5,
quoting ResQNet V, 533 F. Supp. 2d at 409.    Lansa further argues
that "there is no showing that the accused product, Newlook[tm] has
an algorithm that generates a unique screen identification
number," and that the Court's ruling should therefore be
reversed.    Def. Br. 5.

        However, when the language quoted by Lansa is read in
context, it is clear that ResQNet V applied the correct claim
construction, and found that Lansa's NewLook product does use an
algorithm that generates screen IDs as part of its own matching
process.    Proceeding element-by-element, The Court described how
NewLook contains each element of the '075 Patent claim.    As to
the second element of the '075 claim, which is "downloading from
[the] server to [the] terminal, communications software for

                                7

communicating between said terminal and [the] host and a

plurality of specific screen identifying information," ResQNet

V, 533 F. Supp. 2d at 410 (citing '075 Patent, col. 5), the

Court explained:

> The overrides selected by the developer-including
> the NewLook Screen IDs chosen by the developer
> for use with the Identify tool-are stored on the
> server in the "SID file" or "dynamic design
> repository."    The evidence demonstrates that
> running   NewLook   enables   PCs   to   download
> communication software and the SID file from the
> server.    Further, the NewLook Screen IDs chosen
> by the developer and contained in the SID file
> are "sensitive to row/column positions."  If used
> to   identify   unique   screens   in   the   manner
> discussed below, the SID file contains "at least
> two   pieces   of   specific   screen   identifying
> information."

Id. (citations omitted).  The Court noted that the six elements

of the Claim, together, "require an algorithm that recognizes

the screen based on the information downloaded from the

mainframe."  Id.  After reciting the fifth and sixth elements of

the claim,[1] the Court described how NewLook's "Identify" function

uses an algorithm to generate a Screen ID from "trigger text" in

an incoming screen:

---

[1] The fifth and sixth elements of claim 1 of the '075 Patent are:

> if said received screen matches one of the plurality of a
> specific   screen   identifying   information,   displaying   a
> customized GUI screen; and

> if said received screen does not match one of the plurality
> of specific screen identifying information, displaying a
> default GUI screen.

'075 Patent, col. 5, ll. 13-19.

As discussed above, NewLook's dynamic
architecture automatically generates a GUI, or
"best guess" for each incoming screen. Absent
any overrides pre-programmed by the developer,
for each green screen downloaded, NewLook will
display only this "default GUI."

However, a developer can use NewLook's Identify
tool to override the default GUI automatically
generated by NewLook's dynamic recognition
engine. To do so, the developer selects an
action to be taken if the trigger text is found;
NewLook searches each green screen as it is
downloaded from the mainframe for the NewLook
Screen ID and performs the specified action if
the NewLook Screen ID is found.

                    *      *      *

This iterative process of examining the
downloaded green screen for each NewLook Screen
ID, one-by-one, to determine whether an override
should be implemented constitutes a "step-by-step
problem-solving procedure, especially an
established, recursive computational procedure
for solving a problem in a finite number of
steps." ResQNet I, 2002 WL 31002811, *8 n.3,
2002 U.S. Dist. LEXIS, at *25 n.3 (defining
"algorithm").

Id. at 411. The Court thus applied the claim construction

enunciated in ResQNet III, and found that NewLook uses an

algorithm that generates a screen ID as part of the "'matching'

process described in the fifth limitation of claim 1." ResQNet

III, 382 F. Supp. 2d at 441 (alteration omitted).

**2. Lansa Failed to Show that Claim 1 of the '075 Patent Is Inoperable**

Lansa argues that the Court erred by not finding claim 1 of the '075 Patent inoperable. Lansa asserts that claim 1 should require an algorithm that generates a unique screen identification number. Lansa then notes that, as interpreted by the Federal Circuit, claim 1 does not require analysis of all fields present on a screen in order to calculate a screen ID. Thus, there exists a possibility that the '075 Patent would fail to identify a unique screen in the event that screen identifying information outside the invention's purview is altered. Lansa claims that the Court overlooked the testimony of its expert, Mr. Gibson, who testified that in light of this possibility, the '075 Patent would not solve either of the problems it is supposed to address: "[t]o correctly identify screens and when changes are made to the screens." Def. Br. 7 (quoting Trial Tr. 522-23).[2]

This issue was fully briefed, considered and rejected in ResQNet V, which in fact acknowledged the very possibility outlined by Lansa here. See 533 F. Supp. 2d at 415. As stated

---

[2] As noted by ResQNet, the '075 Patent was not in fact supposed to address these problems, but rather "a potential storage and overhead problem" presented by the systems described by the '961 Patent and U.S. Pat. No. 08/722,583. See '075 Patent, col. 1, ll. 64-67.

10

in ResQNet V, Lansa has failed to demonstrate that '075 describes a method "totally incapable of achieving a useful result." Id., quoting Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1571 (Fed. Cir. 1992) ("To violate § 101 the claimed device must be totally incapable of achieving a useful result."). As ResQNet points out, Lansa's own product, NewLook, identifies screens by using less than all the fields on the screen. Opp. Br. 9-10. Further, claim 1 does not preclude an embodiment that analyzes all fields present on a screen in order to calculate a screen ID. Lansa admits that analysis of all fields would eliminate the problem addressed by Mr. Gibson's testimony.

### 3. Lansa Failed to Establish an "On-Sale Bar"

Lansa argues that the Court overlooked evidence supporting Lansa's "on-sale bar" defense. A patent claim is invalid if an embodiment of the claimed invention was both (1) subject to commercial offer for sale in the United States and (2) ready for patenting more than one year before the patent application date. ResQNet V, 533 F. Supp. 2d at 412 (citing Pfaff v. Wells Elecs., 525 U.S. 55, 67-68 (1998)). The party asserting the bar bears the burden of demonstrating its application by clear and convincing evidence. Id. The Court

11

held that Lansa failed to show by clear and convincing evidence
that NewLook version 1.0, which was for sale prior to the '075
Patent critical date, contained two elements of claim 1:
communications software and an ability to function with a host
and server.

Lansa claims that the Court conflated communication
software and emulation software, and therefore erroneously
concluded that absence of emulation software in NewLook 1.0
meant there was no communication software. Def. Br. 8-9.  This
is a misreading of ResQNet V, which noted that the "evidence
that NewLook version 1.0 contained 'communications software' or
could facilitate communication between the host and server is
scant." 533 F. Supp. 2d at 413.  The Court then summarized this
"scant" evidence, including a marketing solicitation dated June
24, 1996, which stated that "Newlook 'analys[es] the data
stream, typically via call to the emulator's HLLAPI application
programming interface,' demonstrating communication between the
program and the client's emulator," and testimony that NewLook
1.0 lacked an emulator, but could download a third-party
emulator. Id.  The Court's recitation of certain evidence
discussing emulation software was incidental to discussing what
little evidence had been presented touching on the issue of
whether NewLook 1.0 included communications software.

12

On the present motion, Lansa elides the importance of
communication with a server, and in fact repeatedly misstates
the relevant claim language as "downloading, from said terminal,
communications software for communicating between said terminal
and said host . . . ." Def. Br. 10; Reply Br. 6. Lansa has
presented evidence that NewLook 1.0 facilitated communication
between a terminal and host. However, the correct language is
"downloading, *from said server to said terminal*, communications
software for communicating between said terminal and said host .
. . ." '075 Patent, col. 5, ll. 4-6 (emphasis added). See also
ResQNet V, 533 F. Supp. 2d at 413 (noting that "Lansa's expert
witness, Charles Gibson . . . testified that 'communications
software' refers to 'downloading the program from the server
along with some of the files'" (quoting Trial Tr. 512)). Lansa
failed to establish that NewLook 1.0 downloaded communications
software and files *from a server* and then used them to interface
with the host as described by the '075 Patent.

### 4. Lansa Has Not Demonstrated the Insufficiency of the Sanction Imposed

Lansa argues that the Court overlooked the fact that
ResQNet never withdrew the '608 Patent when awarding Rule 11

13

sanctions and erred by failing to award Lansa the full amount of
its attorney's fees and costs.

The Court awarded sanctions based on ResQNet's
continued prosecution of the '127 and '608 Patents subsequent to
ResQNet's admissions in a letter to Lansa dated September 21,
2001, that it did not appear that the Lansa system infringed
those patents and that it would be improper for ResQNet to
pursue the claims. See ResQNet III, 382 F. Supp. 2d at 455-56.
On the Rule 11 motion, ResQNet argued that the '127 Patent
claims were dropped after it was "verified" that ResQNet's
belief that it was being infringed by NewLook was incorrect.
Id. at 455. ResQNet "offered no explanation in response to
Lansa's assertions concerning the '608 Patent and ResQNet's
representations that it did not believe the '608 Patent to be
infringed by Lansa's product." Id. at 456. The Court
determined that, on the record before it, "it was unreasonable
for ResQNet, through its attorneys, to proceed to file an
amended complaint containing allegations of infringement of the
'127 Patent and the '608 Patent." Id. (emphasis omitted).
Lansa's motion for Rule 11 sanctions was therefore granted, but
calculation of the amount of the sanction to be imposed was
deferred until after the remaining claims were resolved at
trial. Id. at 457.

After trial, the Court set the amount of sanctions at
$100,000, citing "ResQNet's voluntary withdrawal of the two
patents at issue, the lack of prior history of sanctionable
conduct, and the risk of chilling candid settlement discussions"
as factors to be balanced against "the threat imposed by the
amended complaint, and the costs presumably incurred during this
period." ResQNet V, 533 F. Supp. 2d at 422. Lansa argues that
the Court erred in this assessment, because the '608 Patent
claim was never voluntarily withdrawn.

The Court's reference to the voluntary withdrawal of
the '608 Patent referred to a prior paragraph, which reads in
relevant part: "ResQNet informally withdrew the '127 Patent
infringement claim prior to June 2002, and formally withdrew all
infringement claims when it stipulated to the consent judgment
on November 5, 2002." Id. ResQNet will not be sanctioned for
its reassertion of the '608 Patent claim after remand from the
Federal Circuit. Lansa has presented no evidence that ResQNet
reasserted the '608 Patent claim after remand without a good-
faith belief in the merit of its claim.

Lansa also argues that the Court should increase the
amount of sanctions to the full amount of Lansa's costs and

15

attorney's fees.    However, "'Rule 11 is not a fee-shifting
mechanism and does not create an entitlement' to attorney's
fees."    Arbor Hill Concerned Citizens Neighborhood Ass'n v.
County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) (quoting Estate
of Calloway v. Marvel Entm't Group, 9 F.3d 237, 241 (2d Cir.
1993).

          "[A]ny sanction or shifting of fees and costs which is
made [under Rule 11], need not reflect actual expenditures."
U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc.
v. Merritt Meridian Const. Corp., 95 F.3d 153, 171 (2d Cir.
1996).    Rather, awards made pursuant to Rule 11 "are to be made
'restrictively.'"    Id. (quoting Oliveri v. Thompson, 803 F.2d
1265, 1272 (2d Cir. 1986).    The award should reflect only "that
portion of a defendant's attorney's fee thought reasonable to
serve the sanctioning purpose of the Rule."    Eastway Const.
Corp. v. City of New York, 821 F.2d 121, 123 (2d Cir. 1987); see
also Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp.
654, 667 ("[T]he sanction should not exceed the amount required
to achieve the desired result: the minimum that will reimburse
the party adversely affected by the improper filing and deter
the proscribed conduct.").

                               .

                              16

Here, the Court weighed sixteen factors, cited by both parties, to settle the appropriate amount of the sanction. See ResQNet V, 533 F. Supp. 2d at 421-22. Lansa's motion for reconsideration has not raised any issues ignored by that calculus.

## IV.  THE MOTION FOR A NEW TRIAL IS DENIED

Lansa submits that it is entitled to a new trial in light of the Declaration of Jack Murray (``Murray Decl.''), submitted with Lansa's motion. Murray testifies that he was employed as a Sales Engineer at KnowledgeWare, Inc. during the period of 1993-94, and has reviewed a document referred to as ``the Flashpoint reference'' (which was Defendant's Exhibit 26) which ``appears to be a document [Murray] used while employed at Knowledgeware.'' Murray Decl. ¶2-4. Murray states that ``[d]ocuments such as the Flashpoint reference were distributed with the shipment of the Flashpoint software as a matter of course during the period of my employment at KnowledgeWare.'' Id. ¶4.

A motion for a new trial under Fed. R. Civ. P. 59(a)(2) may be granted based on newly discovered evidence if the moving party can ``demonstrate not only that the evidence existed at the time of the prior action and that it justifiably was not available to the movant . . . but also that the evidence would be

17

admissible and of such import as probably to have changed the result in the prior action.'' <u>Fed. Ins. Co. v. Sheldon</u>, 222 B.R. 690, 693 (S.D.N.Y. 1998). <u>See also</u> <u>In re Cross Media Mktq. Corp.</u>, No. 06 Civ. 4228 (MBM), 2006 WL 2337177, at *8 (S.D.N.Y. Aug. 11, 2006).

In its memorandum in support of the motion, Lansa did not so much as argue that it could not have discovered its newly submitted evidence prior to trial. However, in reply to ResQNet's Opposition, Lansa claims that it ``diligently researched the owner(s) of Flashpoint, searched for individuals knowledgeable about the Flashpoint product, and [was] unable to track down the evidence.'' Reply 4. These generalities are insufficient to establish Lansa's due diligence. <u>See</u> <u>Id.</u> Further, Lansa relies on Murray's testimony for the proposition that materials ``such as'' a given document were distributed to the public, when the document referred to expressly notes that it is ``an unpublished work and is considered a trade secret belonging to the copyright holder.'' <u>See</u> <u>ResQNet V</u>, 533 F. Supp. 2d at 414 (quoting DTX 26 at ZEP 1090). Such testimony does not rise to the level of ``such import as probably to have changed the result in the prior action.'' <u>Sheldon</u>, 222 B.R. at 693.

**V.    CONCLUSION**

Upon reconsideration the judgment is affirmed, and the motion for a new trial is denied.

It is so ordered.

New York, NY
September 2𝔧, 2008

ROBERT W. SWEET
U.S.D.J.